United States District Court
Southern District of Texas
**ENTERED**
January 08, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **BROADLEAF IT, LLC,** § | |
| § | |
| Plaintiff, § | |
| VS. § | CASE NO. 4:24-CV-00303 |
| § | |
| **PATRICIA NICOLE "NIKKI"** § | |
| **WALLEY, COURTNEY A.** § | |
| **WILKINSON, AND NICHOLA** § | |
| **CHARLOTTE CLAGHORN,** § | |
| § | |
| Defendants. | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

This is a trade secrets case. Plaintiff Broadleaf IT, LLC ("Broadleaf") is an Information Technology ("IT") service provider that specializes in technology implementation and managed services. Doc. No. 1 ¶ 8. Broadleaf IT, LLC was formed out of a 2017 purchase of assets owned by its predecessors Reliable IT, LLC, ("Reliable IT" or "RIT") and The Broadleaf Group, LLC, ("The Broadleaf Group"). *Id*. Before and since that time, Broadleaf maintains confidential customer lists, business plans, potential transactions, and profit margins so as to preserve and protect its competitiveness in the IT business market—Broadleaf describes these confidential matters as "trade secrets." *Id.* ¶¶ 12, 34, 78.

Defendants Patricia Walley, Courtney Wilkinson, and Nichola Claghorn are former employees who worked for Broadleaf and its predecessors from before 2010 until 2023. *Id.* ¶¶ 9-11. Plaintiff now alleges that during and after its employment with Broadleaf, Defendants misappropriated trade secrets and attempted to sabotage Broadleaf's projects in an effort to assist their new employer—a known competitor of Broadleaf. Broadleaf asserts federal claims against Defendants under the Defend Trade Secrets Act and the Computer Fraud and Abuse Act, alongside

several related claims under Texas law. Compl., Doc. No. 1. ¶ 54-97. Broadleaf also asserts claims for breach of contract and breach of fiduciary duties. *Id*.

Before the Court are Defendants' Motions to Dismiss those claims. Def. Wilkinson's First Am. Mot. to Dismiss, Doc No. 13; Defs. Walley and Claghorn's Mot. to Dismiss, Doc No. 14. On August 27th, 2024, United States Magistrate Judge Dena Hanovice Palermo issued a Report and Recommendation ("R & R") in this case, recommending that the motions be denied. Doc. No. 25. Defendants Walley and Claghorn filed their objections and Plaintiff filed its response. Doc. Nos. 26 & 27. As required by 28 U.S.C. § 636(b)(1)(C), the Court has conducted a de novo review of the portions of the R & R to which Defendants have objected. However, the Court agrees with the conclusions, and the reasoning, of the R & R. The Court will briefly address each of Defendants objections.

A. Defendant Walley's Breach of Contract Objection

Defendant Walley brings an objection against Judge Palermo's recommendation to decline to dismiss Plaintiff's breach of contract claim against her.[1] The contract at issue here is a Covenant Not To Compete that was originally signed between Defendant Walley and one of Broadleaf's predecessors—Reliable IT. Doc. 1-4 at 5.

The Broadleaf Group, LLC was originally formed in 2005, was sold to Reliable IT, LLC in March 2014, and operated as a division of that company until December 31, 2017, when the assets of the Broadleaf division of Reliable IT were purchased by Plaintiff Broadleaf IT, LLC. Original Complaint ¶ 8. After The Broadleaf Group was acquired by Reliable IT and before

---

[1] Defendant Wilkinson also sought dismissal of the breach of contract claim against her in her respective Motion to Dismiss. Doc. 13 at 9. However, Defendant Wilkinson does not join in objecting to Judge Palermo's decision on this issue. Plaintiff did not bring a similar cause of action regarding covenants against Defendant Claghorn. *See* Doc. 30.

Broadleaf IT, LLC had purchased the assets of RIT's Broadleaf division, Walley became a party to a second Covenant Not to Compete between herself and Reliable IT that she executed on January 1, 2017 (the "2017 Covenant Not to Compete"). *Id*. at ¶ 22. The 2017 Covenant Not to Compete contains a Non-Compete Clause in Section 4, a Non-Solicit clause in Section 3, and a Confidentially Provision in Section 2.[2] *Id*. at ¶ 23. Shortly after, on December 31st, 2017. Broadleaf IT, LLC acquired all of the Broadleaf assets and goodwill from RIT, which included the rights under all RIT contracts, including the 2017 Covenant Not to Compete. *Id*. at ¶ 26.

The non-compete provisions of the covenant have since been waived; however, the non-solicitation and confidentiality provisions remain in effect. Doc No. 1-5 at 2. With respect to the non-solicitation clause,[3] the contract provides that its terms will be in effect "during the period of Beneficiary's employment through. . . (2) years after the termination of such employment. . . (the 'Restricted Term')." Doc. No. 1-4 at 4. At the heart of this dispute is whether, post-assignment, this clause could *plausibly* mean that the Restricted Term ends two years after termination of employment with Plaintiff Broadleaf, or if it *must* mean that it ended two years after termination of employment with the predecessor company Reliable IT. Arguing the latter, Defendant Walley moves to dismiss this claim. Doc. 26 at 5 ("the face of [the 2017 Covenant Not Compete] establishes that the restrictive covenants' 'Restricted Terms' ended no later than (2) years after Walley's employment with non-party BG and RIT ended, which according to the [Original] Complaint, would have ended no later than May 2022, while Walley was still employed by Plaintiff").

---

[2] The Covenant also provided that the "Agreement shall bind the parties hereto, and their assigns, successors, and their legal representatives." Doc. 1-4 at 5.
[3] The Confidentiality Clause does not have a fixed term to which it applies. Instead, the contract states that the clause applies "[d]uring the Beneficiary's employment with RIT, and for all time after." Doc. No. 1-3 at 4.

To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but it must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The elements for breach of contract under Texas law are: (1) a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages caused by the breach. *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499-500 (5th Cir. 2018). Standing to enforce a contract is also necessary, which requires that "the plaintiff must either be in privity of contract with the defendant or be a third-party beneficiary" *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 574 (S.D. Tex. 2020) (quotation omitted). Here, Broadleaf has sufficiently alleged that it is an assignee of the 2017 Covenant Not to Compete. Original Complaint ¶ 26, 88. However, Defendant Walley argues that Plaintiff has not adequately plead that the non-solicitation covenant would extend two years beyond her employment with the successor in interest Plaintiff (as opposed to ending two years beyond her employment with non-party Reliable IT). Doc. 26 at 4. In particular, Defendant argues that "becoming an assignee of a contract does not act to change the parties to the contract." *Id*.

This Court has previously addressed a similar case involving a violation of an assigned non-compete agreement in *M-I LLC v. Stelly*. 733 F. Supp. 2d 759, 795 (S.D. Tex. 2010). There, one of the defendants was first an employee of Specialised Petroleum Services International, Inc. f/k/a Global Completion Services, Inc. ("SPS/GCS" or "Assignor"). *Id*. at 769. During his employment with the Assignor, Knobloch had signed noncompete agreements promising not to disclose any confidential information, solicit the Assignor company's customers, interfere with the Assignor company's customer relationships, or compete with Assignor company. *Id*. Plaintiff M-I LLC ("M-I" or "Assignee") acquired SPS/GCS on August 2, 2006, and received assignment of all contractual rights—including Defendant's noncompete agreement. *Id*. On August 21, 2006,

Defendant resigned from his position with the Assignee company, and was thereafter terminated. *Id*. at 770. Later, the Assignee company—as a successor in interest Plaintiff—sued Defendant for his alleged violation of the noncompete, specifically alleging that he engaged in "Restricted Business" with one of the employer's competitors. *Id*. at 794. As the Court then addressed, "defining the relevant employer" in the context of the non-compete "is an important step, of course, because that definitively sets the geographic and scope of activity limitations" of the contract. *Id*. at 796. Analyzing the contract's language, the Court noted that the covenant not to compete defined the Assignor company as the specific employer that the noncompete provision applied to. *Id*. While the Court agreed that the Assignee company had the authority to enforce the noncompete against Defendant, it ruled that the terms of the non-compete related to the Assignor's business needs, rather than the Assignee's business needs. *Id*. Indeed, "an assignee stands in the same position as the assignor, and may assert only those rights that the assignor had." *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 720 (Tex. App.—Houston [1st Dist.] 1988, writ denied). The Court ultimately concluded Defendant's covenant not to compete—while enforceable by the Assignee company—must be interpreted by the Assignor's business needs due to the specific language of the contract.

Following this Court's previous analysis, we first look to the relevant provisions of the covenant not to compete in the instant case:

> Non-solicit: During the period Beneficiary's employment through the later of (i) two (2) years after the termination of such employment (however caused) or (ii) date upon which all of Beneficiary's intersts in the Class B shares of RIT are transferred, sold, or redeemed, which is longer (the "Restricted Term") Beneficiary shall not, directly or indirectly:
> 
>   a) On behalf of Beneficiary or any other person or entity other than RIT (i) solicit or encourage any customer of RIT who was a customer of RIT while Beneficiary was employed by RIT ("Customer") to terminate or otherwise modify adversely its business relationship with RIT, or (ii) solicit or encourage any Customer to do business with any person or entity that could be done with RIT; or
>   b) On behalf of beneficiary or any other person or entity other than RIT,

> employ or attempt to employ any employee of RIT or recruit or otherwise solicit, induce, or influence any employee of RIT to leave employment with RIT.

Doc. 1-4 at 4-5. The assignment of rights under the acquisition is broad, and Defendant provides the Court with no reason why the covenant—which provides *generally* that it will apply through two years after the termination of Defendant's employment—must mean that it will apply *only* through two years after the termination of Defendant's employment with the assignor specifically. Doc. 1-4; *See Accruent, LLC v. Short*, No. 1:17-CV-858-RP, 2018 U.S. Dist. LEXIS 1441 at *10 (W.D. Tex. Jan. 4, 2018) (finding that where a noncompete *specifically* sets its geographic scope according to the place that assignor did business, the noncompete cannot extend to every country where assignee did business—and assignee may enforce the noncompete only in places where assignor did business). Unlike the situation in *M-I LLC v. Stelly*, it is not clear whether the 2017 Covenant Not To Compete *must* be interpreted by Reliable IT's business needs—and Defendant Walley has not provided sufficient evidence to conclusively show that such an interpretation is indisputable. At the Motion to Dismiss stage, the Court finds that Plaintiff has adequately plead that the assignment of the 2017 Covenant Not to Compete may plausibly be understood to apply through two years after the termination Defendant's employment with Broadleaf IT, LLC. Accordingly, the Court agrees with Judge Palermo's conclusion that this claim should not be dismissed at this stage.

### B. D Recusal Objection of Defendants Walley and Claghorn

In addition to Defendant Walley's individual objection, Defendants Walley and Claghorn ("Defendants") collectively object to the Report and Recommendation as a whole—arguing that Magistrate Judge Palermo[4] should be recused from this case under 28 U.S.C. § 455 and that the

---

[4] Plaintiff refers to Judge Palermo as "the Magistrate." ECF No. 27 at 2. Counsel is reminded that the word magistrate is merely descriptive of the type of judge, and that the proper way to

Report and Recommendation should carry no effect as a result. For the reasons stated below, this Court finds that there is not the slightest basis for disqualification under the text of 28 U.S.C. § 455.

First, 28 U.S.C. § 455(a) provides that "any [magistrate judge] of the United States shall disqualify [themselves] in any proceeding which [their] impartiality might reasonably be questioned." Defendants' chief argument relies on the recently discovered fact that one of Plaintiff's employees—Mr. George Palermo ("Mr. Palermo")—is also Judge Palermo's former brother-in-law. Doc. 26 at 2. However, the facts of this case do not reasonably question Judge Palermo's impartiality nor do they compel recusal under the statute. Neither Judge Palermo nor anyone else involved in this case was aware that this connection existed until after Judge Palermo had released her Report, Judge Palermo herself has not spoken to Mr. Palermo in nearly fifteen years, and Mr. Palermo does not have substantial contact with any of Judge Palermo's immediate family. Doc. 27 at 1-2. Furthermore, Mr. Palermo—who only began working with Plaintiff in March of 2023—has not been included as a potential witness in this case, nor is there substantial evidence that he may stand to directly gain or lose significant benefits as a result of this litigation. *Id*.

Defendants themselves make it clear that "they are not suggesting any impropriety," nor do they suggest that Judge Palermo "was even aware of George Palermo's connection" before her Report and Recommendation was released. Doc. 26 at 2. Defendants merely seem to raise this objection over a concern that it may "present the appearance of a potential bias." *Id*. However, an extremely tenuous connection between a magistrate judge and one employee of a party does not

---

refer to a magistrate judge is "Judge."

provide a sufficient basis for recusal under 28 U.S.C. § 455(a), nor has Defendant cited to case law to suggest otherwise. No fact or law suggest a scintilla of doubt against Judge Palermo's absolute impartiality.

Second, 28 U.S.C. § 455(b) identifies certain specific situations in which a judge or justice should be disqualified from participation in a case. This includes "where [the judge] has personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1) It also includes situations where "[the judge's] spouse, or a person within the third degree of relationship to either of them" is a "an officer, director, or trustee" of a party, "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding," or "is to the judge's knowledge likely to be a material witness." 28 U.S.C. § 455(b)(2)-(5). As described previously, there is no evidence that Judge Palermo has a personal bias as to either party in this litigation. Moreover, Mr. Palermo is not a spouse, nor is he a person with a third degree of relationship to Judge Palermo or to a current spouse of hers. Even if he were, he is certainly not an officer or trustee of a party in these proceedings, is not a likely witness, and Defendants have not demonstrated that he would be substantially affected by an outcome of these proceedings—whatever that outcome may be. Thus, there is no basis for disqualifying the Magistrate Judge or her Recommendation pursuant to 28 U.S.C. § 455(b)—nor have Defendants provided any case law proving otherwise.

The Court hereby **ADOPTS** the R & R and **DENIES** Defendants' motion to dismiss.

**IT IS SO ORDERED.**

Signed at Houston, Texas on January 8th, 2025.

_____
Keith P. Ellison
United States District Judge